105    331
a206s 404

## Knights Templars and Masons Life Indemnity Co. v. Henrietta H. Vail.

1. FORFEITURES—*Not Favored by the Law.*—Forfeitures are not favored by the law; it has been said that they are so odious that courts will resort to all reasonable methods of interpretation and proceeding for the purpose of avoiding them.

2. INSURANCE—*Where Company has Funds in its Hands Belonging to the Insured Applicable to Payment of Assessments.*—The constitution of a mutual insurance company provided that at the end of each ten years continuous membership the member should receive a bond, bearing three per cent annual interest, for such a proportion of the surplus on the first day of the month nearest preceding, as all the money

332     APPELLATE COURTS OF ILLINOIS:

VOL. 105.] Knights Templars & Masons Life Indemnity Co. v. Vail.

paid during the ten years by him on his existing policy should bear to the entire amount of money received by the company during the same period, and that any such bond could be used at par, and accrued interest at any time, without notice, in payments of assessments, and that no bonds should run longer than the life of the member, but, if unused, should be payable with his policy at death, while in the bond so issued it was provided that in order to use the bond in payment of assessments or dues on said policy the bond must first be surrendered to and in the possession of said company for cancellation before the same or any part thereof could be so applied in payment of said assessments or dues. *Held*, that the constitution may be construed to provide that the bond can be used in payment of assessments, either by the company or by the insured, as it is inequitable and against the policy of the law to permit an insurance company to forfeit a life policy for non-payment of a premium, when such company has in its possession the money of the insured to an amount covering the premium, and which it has the power to apply to its payment.

**Assumpsit**, on a policy of life insurance. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Mr. Justice WATERMAN, dissenting. Opinion filed December 30, 1902.

November 2, 1888, Charles A. Vail received from appellant a life insurance policy in part as follows:

EXHIBIT A.

$5,000          POLICY OF MEMBERSHIP.          No. 6261.

In consideration of twelve dollars and the agreements and stipulations herein expressed, Charles A. Vail, bookkeeper, of Ravenswood, Illinois, is admitted to membership in *the Knights Templars and Masons Life Indemnity Company* for the term of *life*, from the second day of November, 1888, at 12 o'clock noon. And in further consideration that the said Charles A. Vail shall pay all dues and assessments made upon him as such member, in pursuance of the constitution and by-laws of said company, at the times and in the manner required of him, the said company will pay the sum of five thousand dollars. At the end of each ten (10) years continuous membership the said Charles A. Vail shall receive a bond bearing three (3) per cent annual interest, payable with the bond, for his entire proportion of the surplus, as per article seven (7), section two (2), which bond is available at any time, without notice, in payment of assessments, as set forth in article seven (7), section three (3), of the constitution on the back of this policy.

This policy is issued and the said Charles A. Vail is admitted to membership in this company, and this policy is accepted by said member, upon the following agreements and stipulations, which are made a part of this contract :

1st. The application on which this policy is issued is made a part of this policy, by reference thereto.

2d. Any failure to pay assessments, as provided in conditions printed on the back of this policy, shall forfeit the membership in this company of the holder of this policy, and all benefits arising therefrom; but may be subsequently restored upon such terms as the directors of the company may fix.

8th. It is further agreed that the constitution or by-laws printed on the back of this policy shall separately and collectively form and be a part of this contract.

This 2d day of November, 1888.

J. ADAMS ALLEN, President.

Countersigned by

W. H. GRAY, General Manager.

Section 1. Upon notice and satisfactory proof of the death of a member (should it be necessary to make an assessment), the company, or such person as the board may direct, shall send by mail, to the last recorded post-office address of every member, a notice containing the name and residence of the deceased member, and the amount due from the member to whom said notice is sent. The party sending such notice may employ a suitable person, persons or corporation, in any town or city, who may act in serving such notices either personally, or by mail. A notice so sent or served shall be deemed and taken to be a lawful and sufficient notice for the payment of the assessment required.

Sec. 2. Should any one fail to forward, as indicated in the notice, the amount thus due, for a period of ten (10) days after the date of said notice, he shall forfeit his membership and all benefits arising therefrom. Any one having thus forfeited his membership may be reinstated, he being alive, within thirty (30) days after the date of said notice, by the payment of all arrearages, and may be reinstated to membership subsequent to the thirty days, upon such terms as the board of directors may fix.

Sec. 3. Any member may make a deposit in advance for the payment of his assessments, which money shall be used for no other purpose by the company, and in case of the member's death before it is so needed, the unused balance shall be paid back with the policy.

334 · Appellate Courts of Illinois.

Vol. 105.] Knights Templars & Masons Life Indemnity Co. v. Vail.

## Article VII.

### BENEFITS.

Section 2.. At the end of each ten years continuous membership such member shall receive a bond, bearing three per cent annual interest for such a proportion of the surplus, on the first day of the month nearest preceding, as all the money paid during the ten years by him on his existing policy bears to the entire amount of money received by the company during the same period.

Sec. 3. Any such bond can be used at par, and accrued interest, at any time, without notice, in payment of assessments, and no bond shall run longer than the life of the member, but, if unused, shall be payable with his policy at death. ·

Sec. 6. Any member having designated his beneficiary or beneficiaries may change the same at his pleasure, without notice to or consent of the beneficiary or beneficiaries, and all accepting any interest in this policy or company do so upon these express terms. .

At a meeting of the board of directors of the defendant company held on April 25, 1894, the following, among other proceedings, were had and done, to wit:

"The following preamble and resolutions were adopted :

'Whereas, on the 27th day of next May it will be necessary under the provisions of the constitution of this company to begin the issuing of interest-bearing bonds to such policy holders as have retained ten years continuous membership in this company, from and out of the surplus fund in its possession, therefore,

'Resolved, that the surplus fund of the company applicable to the redemption of said bonds and interest shall be determined on the first day of each month, beginning May 1, 1894, by taking the cost value of the bonds and securities then in possession of the company and adding thereto the amount of cash on hand, from which aggregate amount shall be deducted the amount of total liabilities of the company, which liabilities shall include all death losses reported and unpaid at that time.

'Resolved, that from and after May 27th next, as the respective policies in this company mature their ten year period, the executive officers of this company be authorized and directed to issue to each of such individual policy holders as may have continued their policy in this company for ten consecutive years, a bond in such amount, bearing inter-

est, and applicable or payable as provided in the constitution of this company, and ascertained in accordance with the calculation as provided by the foregoing resolution.' "

The form of the bond to be given to policy holders of ten years standing in this company was considered and the form attached, marked " Exhibit A," was adopted.

(" Exhibit A" attached to said resolution was a form identical with the form of " Exhibit C " attached hereto.)

On November 2, 1898, a paper designated a bond, for the sum of $66.30, with a slip printed in red ink attached thereto and made a part thereof, was executed by the defendant company and delivered to the said insured.

Such bond is as follows :

### Exhibit C.

### United States of America.

THE KNIGHTS TEMPLARS AND MASONS LIFE INDEMNITY COMPANY OF CHICAGO.    DECENNIAL SURPLUS FUND BOND.

Canceled 5c. Int. Rev. Stamp.

The Knights Templars and Masons Life Indemnity Company, a corporation duly organized and existing under the laws of the State of Illinois, for value received, and in pursuance of the provisions of sections 2 and 3, article 7, of the constitution of said company, hereby promises and binds itself to pay the sum of sixty-six and 30-100 dollars, with interest at the rate of three per cent per annum, in the manner, for the purpose, and upon the terms and conditions following, to wit:

That said sum represents the proportion of the surplus fund of said company that Charles A. Vail is entitled to, as holder of policy number 6261 in said company, and having been a member thereof for ten continuous years. That this bond, with accrued interest, may be used at par by the said member at any time during his life, in payment of assessments or dues on said policy, but in that event this bond shall be surrendered by him to said company for cancellation, and the amount thereof, with accrued interest, shall be placed to his credit as a deposit in advance for the payment of such assessments or dues.    That in order to use this bond in payment of assessments or dues on said policy the bond must first be surrendered to and in the possession of said company for cancellation before the same or any part thereof can be so applied in payment of said assessments or dues.    That should this bond be not so used in

336    APPELLATE COURTS OF ILLINOIS.

VOL. 105.] Knights Templars & Masons Life Indemnity Co. v. Vail.

the payment of assessments or dues, the same, with accrued interest, shall be paid at the death of the said member with his said policy, it being then in force, to the beneficiary or beneficiaries named therein. Provided, however, that whenever, for any cause, the said policy shall become forfeited and void, this bond shall thereby cease to be valid and binding and become forfeited and void. That this bond shall be received by the said member with the understanding that it is not negotiable or transferable, and is available for no purpose other than that hereinabove expressed.

In witness whereof the said The Knights Templars and Masons Life Indemnity Company has caused these presents to be sealed with its corporate seal and signed by its president and attested by its general manager at the city of Chicago, Illinois, this 2d day of Nov., A. D. 1898.

(K. T. & M. L. I. Co. Seal.)

Attest: By W. H. GRAY,     GEO. M. MOULTON, President.
            General Manager.

(Red slip attached to bond:)

Your special attention is called to the fact that no part of this bond can be applied to keeping your policy in force except by its being surrendered to the company as herein specified. ("Exhibit C." 5th.)

On June 2, 1899, notice of assessments 182 and 183, theretofore regularly made by the directors, was mailed to the insured at his last recorded post-office address, and received by him in due course.

Assessments for which this notice was sent were payable June 12, 1899, amount due being $15. This amount was never paid, or offered to be paid, either by Vail or any one for him, during his lifetime.

Insured's policy was canceled on the books of the company for non-payment of the June, 1899, assessment. No assessment was levied against the insured after the June, 1899, assessment, and he never offered to pay the June, 1899, assessment, or any subsequent assessment, which was levied against other members of the company.

The insured died October 2, 1899. His death was reported to the defendant company on or about October 5, 1899, by his son, who was advised by letter, dated October 11, 1899, as follows:

" Knights Templars and Masons Life Indemnity Co. of
Chicago.

W. H. Gray, General Manager.

Home office, Masonic Temple.

Chicago,  Oct. 11, 1899.

Edward Vail, 315, 100 Washington St., City.

Dear Sir:   Yours of the 9th received.   In reply will
say, we are unable to forward blanks to be used in the case
of your late father, as he was not a member of this company
at the time he died, his policy having been canceled for
non-payment of the June, 1899, assessment.

Yours respectfully,

W. H. Gray,

General Manager."

The insured never made any request during his lifetime,
either by himself or any one in his behalf, for reinstate-
ment of his policy of membership in the defendant com-
pany.

The insured never made any offer at any time after the
issuance of the paper designated a bond, above mentioned,
to surrender same for cancellation, nor any request that
the amount of the said paper, with accrued interest, should
be placed to his credit as a deposit in advance for the pay-
ment of such assessments or dues as might thereafter
become due and payable from him to the defendant com-
pany.   On the contrary, the insured retained in his posses-
sion said paper designated a bond, up to time of his death.

It is admitted by the plaintiff that there was a valid for-
feiture of the policy, membership, and all interest of the
insured in the defendant company, for the non-payment of
the June, 1899, assessment, unless such forfeiture was pre-
vented as a matter of law in the manner hereinafter set
forth in the plaintiff's claim.

The plaintiff's claim is that said policy and membership
did not forfeit for non-payment of the June, 1899, assess-
ment, because the insured had an interest in the funds of
the defendant company, to the extent evidenced by the
paper designated a bond, at the time when forfeiture would
otherwise have occurred by non-payment of said assessment,

338 APPELLATE COURTS OF ILLINOIS.

VOL. 105.] Knights Templars & Masons Life Indemnity Co. v. Vail.

which said interest was not forfeited, and should have been applied, without any action on the part of the insured, to the payment of this and subsequent assessments.

The defendant's claim is that under the provisions of the contract and paper designated a bond, the non-payment of the June, 1899, assessment worked a forfeiture of the policy, membership and paper designated a bond, together with every interest of any kind which the insured theretofore had in the defendant company, and terminated his connection with said defendant company.

It is admitted that if the insured had offered the paper, designated a bond, for surrender and cancellation at any time when the said June, 1899, assessment was payable, he would have received credit for the amount thereof, with accrued interest, and the amount so credited would have been applied first to the payment of the June, 1899, assessment and the balance would have been applied to the payment of future assessments and dues until exhausted.

It is admitted by the defendant that if said paper designated a bond had been so offered and surrendered and the amount thereof credited, such amount would have been sufficient to pay the June, 1899, assessment and all subsequent assessments levied on its membership prior to the death of the insured.

It was further stipulated that if the court holds on the foregoing proposition of law in favor of the plaintiff and against the defendant company, then a judgment may be entered against said defendant company for the sum of $5,000, and interest thereon at the rate of five per cent per annum from December 11, 1899, to the date of entering such judgment. And that if the court holds on the foregoing proposition of law in favor of said defendant company and against said plaintiff, then judgment may be entered herein against plaintiff herein for costs.

The court found the issues for the plaintiff and rendered judgment against appellant for $5,392.50.

HERVEY BRYAN HICKS, attorney for appellant.

ELMER ALLEN KIMBALL and SPENCER WARD, attorneys for appellee.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

It is manifest that in preparing the form of bond issued in this case by the company to the assured, pains were not taken to have it correspond in all respects with the constitution of the company. The policy of membership issued to the assured provided that he should receive a bond, bearing three per cent annual interest on his proportion of the surplus, which bond should be available at any time without notice in payment of assessments as set forth in article 7, section 3 of the constitution on the back of the policy.

The constitution did not provide that the bond could be used only upon surrender of the same; neither did it provide that if the policy were forfeited, the bond should be likewise; neither did it provide that the bond should not be negotiable or transferable, or that it should be available for no purpose other than that expressed in the bond (which was for use in the payment of assessments), provided it were first surrendered to and in the possession of the company for cancellation. Forfeitures are not favored by the law; indeed, it is sometimes said they are so odious that courts will resort to all reasonable methods of interpretation and proceeding for the purpose of avoiding a forfeiture. The constitution provides that the bond can be used at par and accrued interest at any time, without notice, in payment of assessments, and that if unused it shall be payable with the policy at the death of the insured. It is neither a strained nor forced construction of the constitution to say that its provision is that the bond can be used in payment of assessments, either by the company or by the assured. Especially is this the case, when the bond has been, without having been so required by the constitution, made non-transferable and non-negotiable, and if unused, is payable with the policy at the death of the assured. The company thus has in its hands means for completely protecting itself.

340 APPELLATE COURTS OF ILLINOIS.

VOL. 105.] Knights Templars & Masons Life Indemnity Co. v. Vail.

If all or a portion of the bond be by it used in payment of assessments, without the request of the assured and without a surrender or cancellation of the same, as the bond is non-transferable and not negotiable, and payable only at the death of the assured, when after such death presented, the company can readily show, if such be the case, that all or a portion thereof has been used in payment of assessments. The fact that the bond was received and retained by the assured without protest against the conditions imposed therein, not contained in the constitution, did not constitute a contract upon his part to a change in the conditions of his policy, which were that he was to receive a bond in accordance with the constitution.

It is urged by appellant that the company could not make use of the funds in its hands belonging to the assured, represented by the bond, in payment of assessments, without his request that it so do.

In Girard Life Ins. Co., Adm'r of Ed. McGarge, v. Mutual Life Insurance Co. of New York, 97 Pa. St., p. 15, the court say :

"It is quite possible there may be facts which in the judgment of the officers of the defendant company justified them in declaring the policy forfeited in this case, yet we are constrained to say that it is inequitable and against the policy of the law to permit an insurance company to forfeit a life policy for non-payment of a premium, when such company has in its possession the money of the assured to an amount covering the premium, and which it has the power to apply to its payment."

And in the same case the court say, upon the question of whether the assured consented to such application, " as a matter of fact, the consent of the assured to the application may be presumed; that he would object to it and thereby forfeit his policy is a proposition too absurd to be considered."

We see no reason why the instrument issued to the assured representing his interest in a surplus should not be designated as a bond. The instrument to be issued under the terms of the constitution is twice mentioned in it as a

bond and the` paper actually received by the assured is therein spoken of, eight times, as a bond. No additional efficacy is imparted to it by calling it a bond. It provides conditionally for the payment of a sum certain and is under seal. If it were called a *simplex obligatio*, which it is not, it would have no more force than if designated as a paper representing a credit.

Being of the opinion that the bond might have been by the company used in payment of assessments without request of or surrender by the assured, we find that there was no warrant for the forfeiture of the policy. The judgment of the Superior Court is therefore affirmed.

The foregoing is the conclusion of a majority of the court in which the writer of this opinion does not concur; he being of the opinion that the provision in the bond that it should be used in payment of assessments only when surrendered to the company and thus necessarily only upon the application of the assured, without such application and surrender, the company had no right to use it in payment of assessments. The decision of the majority of the court is in effect a holding that all the policies of this very large company, with its thousands of members, are subject to the rule here announced, that the company must in every instance before forfeiture make use of the amount owing upon such bonds in payment of assessments, although they be not surrendered and no request for such application be made. Whether such bonds payable with the policy, or the sums represented by such bonds at the death of the assured belong to the beneficiary named in the policy, or descend to the heirs of the assured, or may be by him devised, is a question not now presented to this court. It is manifest that such bonds, issued as they are to be, each ten years, may in many instances amount to a very considerable sum, nearly, if not quite, equaling the policy itself. If the company as a condition before forfeiture is obliged without request by the assured and without surrender of the bond to apply the credit represented thereby to the payment of assessments, it may, in after time, find itself

342    APPELLATE COURTS OF ILLINOIS.

seriously involved by contention between the heirs or devisees of persons assured and the beneficiaries named in the policies.

It is not the case that parties holding life insurance policies are never willing to let the forfeiture occur. On the contrary the experience of all life insurance companies is that the great majority of those who take out life policies permit them to lapse and in many cases apply for a surrender. Nor is the question presented in this case, whether the clause in the bond providing that if the policy be forfeited, the bond shall likewise be forfeited and void, is, under the constitution, a valid and binding condition. Nor is such question determined by the judgment in this case. I should be glad to see a way in which, in consistence with the plain and reasonable provisions of the bond that it should be applied in payment of assessments only upon a surrender thereof by the assured, such provision can, under the law, be held to be of no effect, and the judgment in thisc ase affirmed.